```
                    UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MIKE BALOGA,                    :
                                :CIVIL ACTION - LAW
                                :JURY TRIAL, DEMANDED
         Plaintiff,             :
                                :(JUDGE RICHARD P. CONABOY)
    v.                          :
                                :
PITTSTON AREA SCHOOL            :
DISTRICT; JIM SERINO,           : NO. 3:16-CV-1039
Individually                    :
                                :
         Defendant.             :
                                :
                                :
                                :
                                :
```

FILED
SCRANTON

JAN 1 8 2018

Per_____
DEPUTY CLERK

## MEMORANDUM

### 1. Background.

We consider here cross-motions for summary judgment (Docs. 50 and 56) filed by Plaintiff Mike Baloga and Defendants Pittston Area School District ("District") and Jim Serino, the district's maintenance director ("Serino"). Plaintiff filed this action pursuant to 42 U.S.C. § 1983 based upon allegations that the Defendants sought to deprive him of rights guaranteed by the First Amendment to the Constitution. Specifically, he contends that Defendants sought to inhibit his freedom of expression and his freedom of association. According to Plaintiff, the Defendants

1

sought to inhibit his freedom of expression and freedom of association by transferring him from his job as a custodian in the Pittston Area High School to a similar job in one of the District's elementary schools.

The Defendants respond that Plaintiff was transferred in the normal course of events and that he had always been employed primarily in the elementary school with periodic sojourns at the high school when necessary to complete projects in December, January, and February over a period of years. Defendants deny that Plaintiff's status as vice-president of the maintenance workers' union or his complaints about work schedules had anything to do with his reassignment which, again, they characterize as routine.

## II. Undisputed Facts.[1]

1. Plaintiff became a custodian at the District in 1999. (Doc. 57 at ¶ 10; Doc. 59 at ¶ 10).

2. In 2008 Plaintiff was assigned to the District's primary center. (Doc. 57 at ¶ 11; Doc. 59 at ¶ 11).

3. From 2008 thru 2016 Plaintiff would be transferred to the high school from some date in December thru some date in February or March of the following year. (Doc. 57 at ¶ 12; Doc. 59 at ¶ 12; Baloga deposition at pages 8-11).

4. On those occasions when Plaintiff would be reassigned temporarily to the high school he would receive assignments to do painting or other projects that needed attention from various supervisors.

---

[1] The "Undisputed Facts" in the context of this Memorandum have been compiled by cross-referencing the parties' Statements of Undisputed Facts (Docs. 51 and 57) with the corresponding Responses (Docs. 54 and 59).

(Doc. 57 at ¶ 12-13; Doc. 59 at ¶¶ 12-13).

5. On January 15, 2016, Plaintiff learned that the District was requiring custodians to work on Martin Luther King Day (January 18, 2016). (Doc. 51 at ¶ 1; Doc. 54 at ¶ 1).

6. On January 15, 2016 Plaintiff was vice-president of the union that represented the custodial workers of the District. (Doc. 51 ¶ 3; Doc. 54 ¶ 3).

7. The District had given custodians a day off on Martin Luther King Day for more than 20 years preceding 2016.(Id.).

8. On January 15, 2016, the custodians' union filed a grievance over the District's decision to require them to work on Martin Luther King Day. (Doc. 51 at ¶ 2; Doc. 54 at ¶ 2).

9. The grievance was filed by Thomas Rome on behalf of the District's custodians. (Id.).

10. On January 15, 2016, Plaintiff sent a text message to Defendant Serino stating: "I have plans on Monday. Why are they making us work? We never worked on Martin Luther King Day ever. In my 26 years. Do I have to take a day off?" (Doc. 57 at ¶¶ 19-20) (Doc. 59 at ¶¶ 19-20).

11. Defendant Serino responded by text: "Unfortunately there is multiple events and lots of work that needs to be completed. A day will have to be used if you're not present." (Id.); see also (Doc. 59-1.)

12. On January 22, 2016, Plaintiff and Defendant Serino spoke face to face. (Doc. 57 at ¶ 23; Doc. 59 at ¶ 23).[2]

13. Later on the day of January 22, 2016 Plaintiff was

---

[2] Plaintiff and Serino have different accounts of the content of that conversation. ( See Doc. 51 ¶ 4 and Doc. 54 at ¶ 4).

3

informed that he was being transferred back to the
primary center. (Doc. 51 ¶ 5; Doc. 54 ¶ 5).

14. Plaintiff's transfer back to the primary center did
not result in lowered pay or a reduction in work-
related fringe benefits. (Doc. 57 at ¶ 28; Doc. 59
at ¶ 28; see also Plaintiff's deposition at pages
42-44).

15. Plaintiff did not file a grievance regarding his
transfer to the primary center. (Doc. 57 at ¶ 29;
Doc. 59 at ¶ 29).[3]

16. Since Plaintiff was transferred to the primary
center the custodians' union has continued to file
other grievances. (Doc. 57 at ¶ 30; Doc. 59 at ¶
30).

### III. Summary Judgment Standard.

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson, 477 U.S.

---

[3] Plaintiff contends that he did not grieve his transfer because he was afraid of retaliation. See Plaintiff's deposition at page 44.

at 248). In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. Conoshenti v. Public Serv. Elec. & Gas., 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. Celotex Corp. V. Catreet, 477 U.S. 317, 330 (1986) (citations omitted). The moving party may meet this burden by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." Id. at 325. The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Id. At 324.

Where underlying facts are in dispute, the facts are viewed in the light most favorable to the non-moving party. Abramson v. William Patterson College of N.J., 260 F.3d 265, 267 (3d Cir. 2001) (citing Drinkwater v. Union Carbide Corp., 904 F.2d 853, 854 N.1 (3d Cir. 1990). "In considering a motion for summary judgment, a

5

district court may not make credibility determinations or engage in any weighing of evidence." Anderson, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

**IV. Discussion.**

**A. Plaintiff's Motion for Summary Judgment.**

Plaintiff's motion is not well-taken and it is patently obvious that Plaintiff is not entitled to summary judgment on the record developed in this case. A crucial material factual issue that could fundamentally affect trial of this matter remains in dispute. Defendants' motivation for transferring Plaintiff to the primary center is far from clear. While it is true that the temporal proximity (7 days) between the union's filing of the Martin Luther King Day grievance and the date of Plaintiff's transfer to the primary center is somewhat suggestive of a retaliatory motive, the Court must consider the effect of other testimony and documentation on a jury's deliberations.

The record thus far developed establishes that Plaintiff's assignments at the high school were only transitory every year from 2008 to 2016. The record also contains references to the fact that the hiring of two new employees for the high school's custodial

6

staff plausibly explains while Plaintiff was not even temporarily assigned to the high school after 2016 as had previously been the case. Because a jury confronted with the entire situation that has been outlined by the parties could reasonably conclude that the District's decision to transfer Plaintiff was not retaliatory due to his status as a union official, Plaintiff is clearly not entitled to summary judgment here. The outcome of a trial in this case would necessarily depend upon an assessment of the relative credibility of various witnesses, particularly Plaintiff himself and Defendant Serino. Such an assessment is uniquely within the province of a jury. See Anderson, supra, 477 U.S. at 255. Accordingly, Plaintiff's motion for summary judgment will be denied.

**B. Defendants' Motion for Summary Judgment.**

Defendants' motion for summary judgment faces the same factual uncertainty that compels denial of Plaintiff's motion. However, purely legal issues may operate to Defendants' benefit here. Assuming, as we do for purposes of Defendants' motion, that Serino and/or unnamed superiors directed Plaintiff's transfer in retaliation for his participation in union activity, we still must assess whether the District's act of transferring Plaintiff to the primary center can support Plaintiff's cause of action.

7

To succeed in an action under 42 U.S.C. § 1983, a Plaintiff must demonstrate that a state actor deprived him of a federally protected right. In this case, Plaintiff alleges that his right to freely express himself and to freely associate under the First Amendment were curtailed by Defendants. In the Third Circuit the test for evaluating a claim for retaliation related to activity protected by the First Amendment is set forth in Mitchell v. Horn 318 F 3d 523, 530(3d Cir. 2003). Mitchell, supra, requires that a Plaintiff establish: "(1) constitutionally protected conduct; (2) retaliatory actions sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and a retaliatory action. On its face the Mitchell test is conjunctive and, as such, all three criteria of the Mitchell test must be satisfied for Plaintiff to prevail. The first element of the Mitchell test involves a determination that Plaintiff engaged in constitutionally protected conduct. This determination is a purely legal one for the Court. Hill v. Borough of Kutztown, 455 F.3d 225,241(3d Cir. 2006). Plaintiff cites various cases from other circuits for the proposition that speech in the context of union activity will usually constitute protected speech. (Doc. 52 at 4-5). This Court does not dispute Plaintiff's assertion, but will observe

8

that whether an employee's speech comes within the protection of the First Amendment is a highly case-specific inquiry.

In the context of Government employment, the Court must first determine whether the employee was speaking in an "official capacity" or a private capacity. Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). When employees speak in their official capacities they are categorically not speaking as citizens for First Amendment purposes and "the Constitution does not insulate their communications from employer discipline." (Id.). Because it is obvious that none of the relevant speech that Plaintiff attributes to himself in his filings would be "official" in character, this matter may not be resolved on this basis.[4]

We next consider whether Plaintiff's relevant speech involved a matter of public concern. The First Amendment shields a public employee provided he is speaking as a citizen on a matter of public concern. Garcetti at 418. "Whether an employee's speech relates to a matter of public concern must be determined by the content, form, and context of a given statement as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48 (1983). Internal complaints

---

[4] Speech is of "official" character when it is made pursuant to an employee's official duties. The question whether custodians got Martin Luther King Day off in 2016 had nothing to do with the manner in which Plaintiff or his brethren performed their jobs. See Garcetti, supra, at 421-22.

9

concerning work place management and matters that are articulated solely because of their personal effect on the employee are not protected speech. Garcetti at 418; see also Borough of Duryea v. Guarnieri, 564 U.S. 379, 386 (2011) ("If an employee does not speak as a citizen, or does not address a matter of public concern, 'a Federal Court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.'") (Citing Connick, supra, at 147.)

The speech Plaintiff seeks to characterize as related to a matter of public concern was directed only to the question whether he and his fellow custodians would be getting a day off on Martin Luther King Day in 2016. This is true both in connection to the text message he transmitted on January 15, 2016 and to the conversation he alleges to have had with Serino on January 22, 2016. The Court cannot construe this question as a matter of public concern inasmuch as it does not believe that the general citizenry of the Pittston Area School District was affected by or the slightest bit concerned over the work schedule of the District's custodians on the date in question. In this instance, Plaintiff's speech was predominantly motivated by his personal preference to have a paid holiday and the District's decision to require work that day. Plaintiff's text

message to Serino on January 15, 2016 was not transmitted in language that characterized the request as union business. Rather, the text communication was couched in the language of an individual making a personal request. This Court views the communication in question as one implicating only personal preferences or, broadly interpreting the utterance Baloga attributes to himself in his conversation with Serino on January 22, 2016, one expressing concern for the morale of his co-workers. This case is reminiscent of Sanguini v. Pittsburgh Board of Public Education, 968 F2d 393 (3d Cir. 1992). In Sanguini a teacher wrote a news letter for distribution in the school that contained an excerpt complaining that fellow staff members were being placed under undue stress by the administration. Shortly after the publication of this complaint, Sanguini was deprived of a coaching position in the District. She sued the District claiming that the District had retaliated against her for exercising her First Amendment rights. The Third Circuit, per now Justice Alito, dismissed Sanguini's complaint and stated:

> … we are convinced that Sanguini's statements in the present case did not relate to a matter of public concern. Sanguini did not comment on any broad social or policy issue. Nor did she comment on how the Taylor

> Allderdice School was discharging its educational responsibilities or how the school authorities were spending the tax payers' money.
>
> … Rather, her statements focus solely on employee morale, and we see no meaningful distinction between these statements and those found unprotected in Connick. Sanguini at 399.

As in Sanguini, this case is one in which the speech at issue implicates only personal preferences and, perhaps, employee morale. The Court cannot view the communications at issue here as invoking any public concern worthy of First Amendment protection.

Even if the Court could conclude that Plaintiff's speech in this matter involved a matter of public concern, the Court would still need to consider whether the interest of the District in promoting the efficiency of the public services it performs through its employees outweighs the interest of the employee in commenting on the matter. Connick, supra at 142 (citing Pickering v. Board of Education 391 U.S. 563, 568 (1968). A public employee "must accept certain limitations on his or her freedom." Garcetti, supra, at 418. The Government's interest in insuring that its operations are efficient and effective requires broad authority to supervise the conduct of public employees. Guarnieri, supra, at 386.

12

Mindful of these precedents, and mindful of the admonition in Connick that we consider the entire context of a matter such as this, we conclude that, even if one ascribes a public concern to the subject matter of Plaintiff's speech, Plaintiff's interest in speaking out on his work schedule must be subordinated to the District's interest in allocating its personnel in a manner that promotes harmony in the workplace and efficient performance of its mission. As acknowledged by Plaintiff, he worked primarily at the District's primary center for approximately nine months each year and was brought to the high school and then reassigned to the primary center for indeterminate periods of time as needed by his supervisors. In this context, Plaintiff's reassignment to the primary center on January 22, 2016, regardless of his employer's motivation, must be seen as something inherently within the District's prerogatives. The Court's duty here is to weigh the employee's interest in free speech against the employer's interest in promoting efficiency among its employees. Feldman v. Philadelphia Housing Authority, 43 F 3rd 823, 829 (3d Cir. (1995). Having weighed these respective interests in this case, we consider the employee's relatively trivial interest in receiving a paid holiday to be

subordinate to the District's interest in maintaining an efficient workplace.

For the previously discussed reasons, and particularly because we find Plaintiff's complaint in this matter to be speech that relates solely to mundane employment grievances that do not implicate a matter of public concern (see Sanguini, supra), Defendant's Motion for Summary Judgment will be granted. An Order consistent with this determination will be filed contemporaneously.

By the Court,

/s/ Richard P. Conaboy

**RICHARD P. CONABOY**
**United States District Judge**

DATED: 1-17-118